United States District Court
Southern District of Texas
**ENTERED**
September 25, 2026
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION

No. 3:23-0161

DAMIEN JONES, TDCJ # 02526046, PLAINTIFF,

v.

J. ALLEN AND ASSOCIATES OF TEXAS, *ET AL.*, DEFENDANTS.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE:*

The plaintiff, Damien Jones, alleges in this civil-rights suit that the defendants violated his rights during his detention in the Brazoria County Detention Center (BCDC). The remaining defendants, Brazoria County and J. Allen & Associates of Texas, LLC (J. Allen), each filed a motion for summary judgment. Dkt. 123; Dkt. 124. Jones has responded and the defendants replied. Dkt. 126; Dkt. 128; Dkt. 135; Dkt. 136; Dkt. 145; *see* Dkt. 137 (plaintiff's declaration filed July 31, 2026). Jones also filed multiple motions, including a motion to appoint counsel. Dkt. 139.

The court has carefully considered the pleadings, the motions, the responsive briefing, the exhibits, the applicable authorities, and all matters of record. For the reasons explained below, J. Allen's motion for summary judgment

will be granted. Brazoria County's motion will be granted in part as to Jones's claims under 42 U.S.C. § 1983 and denied in part as to his claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). Jones's motion for appointed counsel will be granted for the claims going to trial. His other pending motions will be denied. The court's reasons are explained below.

## I. BACKGROUND

Jones filed this suit when he was a pretrial detainee in the BCDC, which is run by Brazoria County. J. Allen, a private organization that contracted with the county, was the sole medical provider at BCDC at all relevant times. Dkt. 124-1, at 1, ¶ 2. Jones claims that BCDC has a policy requiring pre-payment for eye examinations and that, based on the policy, the defendants delayed urgent treatment for his vision deterioration between March 24 and April 7, 2023, leading to his legal blindness. He also claims that the defendants failed to accommodate his blindness between March and October 2023. *See* Dkt. 104 (order dated Mar. 30, 2026, defining remaining claims). Each defendant has moved for summary judgment on all claims.

### A. Vision Treatment (March 24-April 7, 2023)

In late December 2022, before Jones was detained at BCDC, he was treated at Matagorda Regional Medical Center and Memorial Hermann hospital. Dkt. 123-4, at 57-98. His hospital records reflect that Jones had presented with blurred vision, headache, right-sided droop and weakness, and uncontrolled hypertension. They further note that Jones had been noncompliant with his blood-pressure

medications and that medical providers evaluated and treated him for a possible stroke. At the time of discharge on December 31, 2022, his blood pressure had been adequately controlled and almost all his symptoms had resolved. *Id.* at 63-68.

From March 4, 2023, until October 23, 2023, Jones was detained in BCDC. Dkt. 124-1, at 1, ¶ 2. He claims that, between March 4 and 24, he was "fully functional" without corrective lenses or visual aids. Dkt. 126-1, at 1.[1] However, he claims that his vision deteriorated rapidly between March 24 and April 7 and that, despite his submission of approximately 40 urgent requests for vision treatment to jail officials, he was not treated, examined, or assessed until April 7. *See*, *e.g.*, *id.* at 1-2 (plaintiff's declaration). On April 7, Dr. Julie Nguyen diagnosed him as legally blind in both eyes and recommended aids and therapy. Dkt. 123-4, at 55 (record of April 7 appointment); *see* Dkt. 126-1, at 2-3.[2]

The record supports Jones's statements that he repeatedly reported his vision loss to jail officials after March 24. Wiggins, a representative of J. Allen who was the medical administrator for the jail, provides a long list of Jones's reports and requests for treatment between March 24 and April 7. Dkt. 124-1, at 3-9, ¶ 14.

---

1 Jones's medical records reflect that, upon his intake to BCDC, he did not report vision problems. *See* Dkt. 123-4, at 43-46. His intake records also indicate that Jones did not report to jail officials that he had been hospitalized in December 2022. *Id.* at 54 (intake screening reflects that on March 4, 2023, Jones answered "no" regarding any hospitalization in the last 90 days).

2 Jones states that a record with Dr. Nguyen's diagnosis and recommendation was placed in a sealed envelope and handed to the officer escorting him for transport to jail officials. *Id.* at 3. The record of Dr. Nguyen's examination bears an undated signature from someone representing "Brazoria County Medical Staff." Dkt. 123-4, at 55.

In dozens of urgent messages to jail staff, Jones repeatedly complained of symptoms such as progressing vision loss, headaches, heart palpitations, chest stinging, and numbness. *Id.* Beginning on or about March 27, Jones also disclosed his hospitalization from December 2022 and his evaluation for a possible stroke. *Id.* at 4, ¶ 14. On March 29, 2023, J. Allen obtained Jones's hospital record. Wiggins states that, based on a review of the hospital records, medical personnel ordered regular blood-pressure checks for Jones and monitored him for stroke-like symptoms. *Id.* at 9, ¶ 15; *see* Dkt. 123-4, at 53. Jones continued to send frequent, urgent messages about his deteriorating vision and need for treatment. Dkt. 124-1, at 5-8, ¶ 14. On April 5, jail staff scheduled him for the April 7 appointment with Dr. Nguyen. *Id.* at 8, ¶ 14.

Jones claims that his care was delayed between March 24 and April 7 because BCDC has a policy that requires detainees to pre-pay for vision treatment outside of the detention center. He alleges that, based on the policy, J. Allen employees refused his urgent requests for treatment on March 26, April 1, and April 4, and that jail officials told him to wait until he was released from detention to get treatment. *See* Dkt. 35, at 9, 12, 26; Dkt. 104, at 17-18. J. Allen's evidence provides partial support for Jones's allegations. For example, Wiggins states that on March 27, when Jones reported that he was trouble focusing on a book, a staff member advised Jones to check with the chaplain for free reading glasses. Dkt. 124-1, at 4, ¶ 14. On April 1, in response to a message from Jones stating he could not see well enough to read, jail staff told Jones that he could ask his family to pre-

pay for an appointment. *Id.* at 5, ¶ 14. Several days later, on April 4, in response to a message from Jones about the jail's failure to address the problem, staff asked Jones if his mother could pre-pay for an eye examination; that same day, another staff member told Jones that he "had been seen by a provider and that, if he was concerned, he would have sought treatment outside [of the] jail." *Id.* at 7, ¶ 14.[3]

In March 2026, the court noted that the record did not clearly identify whether the county or J. Allen was the policymaker for medical treatment of BCDC detainees. With its current motion, Brazoria County presents an affidavit from Sheriff Stallman stating that he is the "final policymaker" for the Brazoria County Sheriff's Office and is "responsible for the proper administration of [BCDC], which includes the promulgation of policies that ensure individuals detained in [BCDC] receive adequate care." Dkt. 123-1, at 3, ¶ 5. Sheriff Stallman refers to the county's jail manual, promulgated in 2012, which includes a chapter governing health services. Dkt. 123-4, at 2-10. The manual states that the Sheriff's Department "shall insure that all inmates receive adequate medical care comparable to what is generally available in Brazoria County" and that the county contracts with J. Allen "to provide medical and psychological care to the inmate population." *Id.* at 5; *see id.* at 11-17 (appendix). The manual and appendix allow for treatment outside of the detention center as needed. *Id.* at 7, 13. J. Allen agrees that the county is the

3 The exhibit does not clearly indicate whether "he" in the phrase "if he was concerned" referred to Jones or the medical provider.

policymaker for medical treatment at BCDC. Dkt. 124, at 10-11 (citing jail manual and appendix).

Sheriff Stallman avers, based in part on the jail manual and appendix, that BCDC had no policy requiring detainees to pre-pay for care:

> . . . J Allen was required to evaluate and determine when a detainee's healthcare needs warranted care to be provided by a local hospital, a specialist, or another outside provider. With respect to vision care, this may entail evaluation and/or treatment by an ophthalmologist, optometrist, or another healthcare profession who, in J Allen's opinion, should provide such care to ensure that the individual receives adequate medical care at a level comparable to that generally available in Brazoria County. I authorized J Allen, given its expertise and experience in the provision of healthcare, the authority to make all such healthcare decisions in the Detention Center and *such decisions were not limited, conditioned upon, or impacted in any way by an individual's advance payment for such care.*
>
> I am aware of Plaintiff's factual allegations in the above lawsuit. *I have neither adopted nor acquiesced to any policy or practice that would require any individual detained in the Detention Center to make a payment in advance of receiving any necessary medical care, including vision care*. . . .

Dkt. 123-1, at 3, ¶¶ 7-8 (emphasis added). *See* Dkt. 124-1, at 2, ¶ 7 (J. Allen's medical administrator declares, "Nowhere in the Jail Manual or appendix was a policy requiring inmates to pre-pay for eye examinations. The Jail Manual is consistent with my understanding of [the jail's] policies and procedures"). As further support for its position, the county presents an affidavit from the county auditor stating that in 2023, the county approved and paid 1,266 invoices for outside medical services for detainees, including 12 invoices from Dr. Nguyen for vision care to detainees. Dkt. 123-2, at 3, ¶ 5; *see id.* at 4-16 (claims paid by county).

J. Allen presents evidence that Jones did not pre-pay for his April 7 appointment with Dr. Nguyen. Dkt. 124-1, at 3, ¶ 9 (medical administrator states that, based on his personal knowledge and review of the records produced by the county for this suit, he is "not aware of any record showing that Jones . . . . or anyone acting on [his] behalf prepaid for the April 7, 2023, optometry appointment"). Jones does not claim or present evidence that he, his family, or anyone acting on his behalf paid in advance for the appointment.

### B. Vision Accommodations (March-October 2023)

Jones claims that, from March through his transfer out of BCDC in October, he made multiple requests to J. Allen and county officials for accommodations of his blindness, including requests for therapy, handrails, and shower seats.

The county argues that Jones did not present a proper request for accommodations until October and that jail staff then acted expeditiously on his request. Dkt. 123, at 45-46; *see* Dkt. 123-4, at 142-44 (accommodation requests in October 2023). However, Jones maintains that he could not submit a formal accommodation request any earlier because, before October, BCDC had no ADA coordinator and provided no official information to detainees regarding how to request ADA accommodations. Dkt. 126-1, at 3. He further states that the defendants never interacted with him about his requests until months later, after he filed this lawsuit and Disability Rights Texas advocated for detainees. *Id.* at 3-

4.[4] He presents the county's written policy for accommodations requests, which reflects an effective date of October 9, 2023. Dkt. 135-1.

The county also argues that it was unaware that Jones needed accommodations. It presents an affidavit from Wayne Williams, jail captain for BCDC, stating that he observed "no issues" with Jones's vision and saw him walking in the jail without difficulty. Dkt. 123-3, at 2-3, ¶¶ 3-4. Williams also states that Jones used an electronic tablet to type, send, and respond to messages with jail staff. *Id.* at 3, ¶ 4. However, Jones presents evidence of his multiple requests for accommodations. For example, on April 7, 2023, the day of his appointment with Dr. Nguyen, Jones sent an electronic message to jail staff requesting the therapy and training she had recommended. Dkt. 135-12. On April 17, 2023, his mother emailed a county official requesting accommodations for Jones's blindness and received a response the next day from the county's safety coordinator stating that officials would consider and respond to her inquiry. Dkt. 135-9. In May, Jones sent a message stating he was in the "medical tank" and had received no accommodations for blindness such as handrails or shower seats. Dkt. 135-19. On June 22, Dr. Nguyen wrote a letter detailing Jones's need for therapy and devices. Dkt. 135-7. In July, both Jones and his mother sent additional messages to jail

---

[4] The record contains evidence that Disability Rights Texas contacted jail officials on Jones's behalf and engaged in an "interactive process" with BCDC officials to negotiate for detainee accommodations. Dkt. 135-6; Dkt. 135-8; Dkt. 135-13. Although the record does not clearly reflect when the negotiations began, Disability Rights Texas closed its file in November 2023. Dkt. 135-6

officials reminding them of Dr. Nguyen's recommendations for therapy and other accommodations. Dkt. 135-5; Dkt. 135-16; Dkt. 135-17. At least one response advised Jones that he would need to wait until he was released from detention for therapy. Dkt. 135-16.

## II. LEGAL STANDARDS

### A. Review of *Pro Se* Pleadings

Because the plaintiff is an inmate bringing suit about prison conditions, the Prison Litigation Reform Act requires the court to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see* 42 U.S.C. § 1997e(c)(1) (providing that the court "shall on its own motion or on the motion of a party dismiss any action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief").

In reviewing the pleadings and litigation history, the court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic

recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

**B. Summary Judgment—Rule 56**

The defendants have moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id.* "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* The nonmoving party must present specific facts which show "the existence of a genuine issue

concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (cleaned up).

In deciding a summary-judgment motion, the court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (cleaned up). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 348 (5th Cir. 2012) (cleaned up); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not require the court to sift through the record in search of evidence supporting a party's opposition to summary judgment. Evidence not referred to in the response to the motion is not properly before the court, even if it exists in the summary-judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although the plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary-judgment motion. *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary-judgment record to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *see E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe *pro se* filings liberally, we still

require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary judgment evidence") (cleaned up).

## III. ANALYSIS

### A. Summary-Judgment Motions

Each defendant seeks summary judgment on Jones's remaining claims in this lawsuit, which are: (1) his civil-rights claim under *Monell* that a pre-payment policy at BCDC delayed his vision care in March and April 2023, and (2) his claim that the defendants failed to accommodate his disability under the ADA and RA.

#### 1. Policy Claim

Jones alleges that the defendants delayed his vision care in March and April 2023 due to their pre-payment policy. The Fourteenth Amendment protects a pretrial detainee's right to adequate medical care. *Allen v. Hays*, 65 F.4th 736, 747 (5th Cir. 2023); *Garza v. City of Donna,* 922 F.3d 626, 634 (5th Cir. 2019). His constitutional claim can be reviewed under 42 U.S.C. § 1983, which provides a vehicle for claims against persons acting "under color of state law" for a constitutional violation. *See Pratt v. Harris Cnty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016).

A municipality such as Brazoria County qualifies as a "person" for purposes of § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The summary-judgment record clearly demonstrates that Sheriff Stallman is the policymaker for BCDC. Dkt. 123-1, at 3, ¶ 5 (Stallman affidavit); Dkt. 123-4, at 2-10 (jail manual);

*id*. at 11-17 (appendix); Dkt. 124, at 10-11; *see Robinson v. Hunt Cnty., Texas*, 921 F.3d 440, 448 (5th Cir. 2019) (in Texas, the final policymaker for the county jail is the sheriff).

A plaintiff bringing a *Monell* claim against a municipality must show (1) an official policy or custom; (2) a policymaker who can be charged with actual or constructive knowledge; and, (3) that the policy or custom was the "moving force" behind the violation of the plaintiff's rights. *Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 389 (5th Cir. 2023). The Supreme Court has soundly rejected municipal liability based on *respondeat superior*. *Valle v. City of Houston*, 613 F.3d 536, 543 n.4 (5th Cir. 2010) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988)). To satisfy *Monell*'s first element, Jones must show an official policy or custom that required pre-payment for eye examinations for detainees in the BCDC. For liability to attach, he must show "an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542.

The county has provided its written policies for medical care at BCDC, which explicitly provide for treatment or referrals outside of the jail facility. Dkt. 123-4, at 7, 13. The policies have no provision requiring pre-payment by the inmate as a condition for treatment, and Sheriff Stallman states that he "neither adopted nor acquiesced to any policy or practice that would require" pre-payment by a detainee for necessary vision care. Dkt. 123-1, at 3, ¶ 8. In his responses, Jones does not present specific facts that could demonstrate a genuine issue as to whether an

official written policy required BCDC detainees to pre-pay for outside vision exams.

Jones also argues that the county had an unconstitutional custom requiring pre-payment. "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Cambric v. City of Corpus Christi*, 170 F.4th 321, 325 (5th Cir. 2026) (cleaned up). A plaintiff can prove the existence of a custom by showing "a pattern of abuses that transcends the error made in a single case." *Benfer v. City of Baytown, Texas*, 120 F.4th 1272, 1286 (5th Cir. 2024), *cert. denied,* 145 S. Ct. 1313 (2025); *see Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (the alleged pattern must involve "sufficiently numerous prior incidents," as opposed to "isolated instances").

Jones's argument for a BCDC custom relies on three messages from jail personnel stating that he should pre-pay for his vision appointment, all of which he received during the two-week period when he was urgently requesting care. On summary judgment, the court views these facts in the light most favorable to Jones. Nevertheless, even if proven at trial, the statements could not demonstrate a genuine issue of material fact under *Benfer* because they do not show that a defendant had a pattern of abuses beyond Jones's case. *See Benfer*, 120 F.4th at 1286. Additionally, the court notes that the county presents evidence from its auditor that it frequently paid for outside appointments for detainees, including

appointments with Dr. Nguyen. Dkt. 123-2, at 3, ¶ 5; *id.* at 4-16.[5] Jones thus does not demonstrate a genuine fact dispute as to any issue that is material to the court's resolution of his claim regarding a county custom.[6]

Regarding J. Allen, Jones's policy claim does not satisfy the *Monell* elements. As stated above, Sheriff Stallman, and not a J. Allen official, is the policymaker for BCDC. Although the sheriff delegated some medical decision-making authority to J. Allen, the delegation is insufficient to demonstrate final policymaking authority under *Monell*. *See Arnone*, 29 F.4th at 266; *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010); *Valle*, 613 F.3d at 542-43. Thus, Jones's allegations that J. Allen personnel told him that he needed to pre-pay for an outside vision examination could not suffice to show an official policy or custom of BCDC. The court will grant summary judgment for J. Allen.

Jones's filings present troubling facts that, taken as true, indicate a delay in urgently needed vision care. However, his sole claim in this lawsuit regarding delayed care is based on alleged pre-payment policy. Because he does not

---

5 As noted above, Jones does not dispute J. Allen's evidence that no one pre-paid for his April 7 appointment.

6 The county additionally urges summary judgment based on *Monell*'s second element, the actual or constructive knowledge of the policymaker. It argues that Sheriff Stallman did not have knowledge of a policy or custom requiring pre-payment, citing his affidavit stating that he has not adopted and is not aware of any directive or practice by J. Allen requiring a detainee to pre-pay for vision care. Dkt. 123-1, at 3, ¶ 8; *see Arnone v. Cnty. of Dallas Cnty., Texas*, 29 F.4th 262, 266 (5th Cir. 2022) (a county can be held liable only for those official policies "decided or acquiesced to by a county policymaker") (cleaned up). Because summary judgment is appropriate based on *Monell*'s first element, as explained above, the court does not reach the second or third elements.

demonstrate a genuine issue of material fact as to an official policy or custom by either defendant, summary judgment will be granted for the defendants.

Jones has requested a continuance under Federal Rule of 56(d) and filed motions for discovery and to compel that pertain to his policy claim. As discussed fully below, these requests do not warrant denial or deferral of a ruling on this point.

**2. ADA and RA Claims**

Jones claims that, from March through October 2023, the defendants failed to accommodate his disability as required by the ADA and RA. Title 2 of the ADA prevents discrimination by a public entity based on a disability. 42 U.S.C. §§ 12132-12133; *Carter as next of friend of Carter v. City of Shreveport*, 144 F.4th 809, 813 (5th Cir. 2025). Section 504 of the RA, 29 U.S.C. § 794, also prevents disability discrimination, and courts "equate liability standards under § 504 of the Rehabilitation Act and the ADA." *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023) (cleaned up). However, the RA has more stringent standards because, unlike the ADA, it requires that the discrimination be solely by reason of the plaintiff's disability. *Id.*; *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 416-17 & n.38 (5th Cir. 2021). Liability under the RA is limited to programs that receive federal financial assistance. 29 U.S.C. § 794; *Prim v. Stein*, 6 F.4th 584, 594-95 (5th Cir. 2021).

**a. J. Allen**

J. Allen is a private organization that contracted with the county for medical

services at BCDC. Dkt. 124-1, at 1, ¶ 2. However, liability for disability discrimination under Title 2 of the ADA is limited to a "public entity." 42 U.S.C. § 12132; *see* 42 U.S.C. § 12131(a) (defining "public entity" as a state or local government; a state or local government instrumentality; or a commuter authority). J. Allen thus cannot be held liable under Title 2 of the ADA. *See Prim*, 6 F.4th at 594 (dismissing ADA claim against a defendant that was not a public entitle within the meaning of § 12131). Jones's arguments that J. Allen authorized, carried out, ordered, and implemented accommodations at BCDC—even if proven at trial—would not be sufficient to prove that J. Allen is liable as a public entity under the ADA. Moreover, Jones does not plead or argue that J. Allen receives federal funding, as required for liability under the RA. *See Prim*, 6 F.4th at 594-95. Therefore, summary judgment will be granted for J. Allen.

**b. Brazoria County**

Brazoria County is a public entity subject to ADA liability. *See* 42 U.S.C. § 12131(a). To succeed on a failure-to-accommodate claim under the ADA or RA, a plaintiff must prove: "(1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020) (cleaned up). To recover damages on an accommodation claim, a plaintiff must show intentional discrimination, which requires "at least actual knowledge that an accommodation is necessary." *Paley*, 81 F.4th at 450 (cleaned up). The Fifth Circuit explained the actual-knowledge

requirement:

> For a failure-to-accommodate claim specifically, intentional discrimination requires at least actual knowledge that an accommodation is necessary. The requisite notice comes from the plaintiff's request for an accommodation or from facts establishing that the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents. Notice beyond merely notice of the disability is required because the ADA and § 504 do not require clairvoyance. Knowledge of a disability is different from knowledge of the resulting limitation and certainly is different from knowledge of the necessary accommodation.

*Id.* (cleaned up).

The county seeks summary judgment on Jones's claims under the ADA and RA and argues that Jones's limitations were not known to its officials.[7] They argue that Jones provided no information before the April 7, 2023, appointment about his need for accommodations "other than reporting in late March that his vision was diminishing"; made no requests for devices or aids; regularly read and typed messages on an electronic tablet; and walked down hallways without assistance. Dkt. 123, at 37-38 (citing record). They also maintain that, although Jones reported to J. Allen that he had fallen in the shower, he never communicated that the fall was related to his disability. *Id.* at 39-40 (citing record). However, as detailed in the *Background* above, Jones points to his multiple messages informing officials

---

7 The county also argues that Jones's claims regarding medical treatment are not actionable under the ADA. Dkt. 123, at 35-36. Jones states in his response that he does not bring an ADA claim regarding medical treatment. Dkt. 135, at 3, ¶¶ 59-63.

of his limitations and requesting accommodations.[8] On this record, the evidence demonstrates a genuine issue of material fact regarding the county's knowledge of Jones's limitations and need for accommodations.

The county further claims that, regarding other devices and aids identified by Jones in this suit, it promptly made several accommodations once Jones made direct requests on October 6, 2023. Dkt. 123, at 45-46; Dkt. 145, at 4. This argument does not account for Jones's multiple requests lodged before October. Moreover, Jones clearly alleges that, at the time of his earlier requests, the county had no ADA coordinator or official information on how to obtain ADA accommodations and that jail officials told him they had no ADA services available. Dkt. 135, at 6. Evidence presented by the county provides some support for Jones's position, because it reflects that its form accommodation request was not effective until October 9, 2023. Dkt. 135-1. This argument by the county thus does not warrant summary judgment in its favor.

Finally, the county seeks summary judgment based on its argument that it did not intentionally discriminate against Jones, as is required for recovery of

---

8 *See*, *e.g.*, Dkt. 135-12 (message from Jones dated April 7, 2023, requesting the therapy Dr. Nguyen stated that he needed); Dkt. 135-9 (letter from Jones's mother to county official dated April 17, 2023, requesting accommodations, with confirmation of receipt from the county's safety coordinator); Dkt. 135-19 (Jones's grievance dated May 22, 2023, stating that he is in the medical tank and "we have had no accommodations for the disabled, such as handrails, shower seats, accommodations for the blind"); Dkt. 135-7 (Dr. Nguyen's letter regarding necessary therapy and devices dated June 22, 2023); Dkt. 135-5 (copy of email from Jones's mother to Sheriff Stallman dated July 7, 2023, requesting visual therapy as recommended by Dr. Nguyen). *See also* Dkt. 123-4, at 55 (record of Dr. Nguyen's examination on April 7 bears a signature from a person representing the county's medical staff).

compensatory damages, because it did not have actual knowledge that the accommodations were necessary and because they relied on the optometrist's recommendation. Dkt. 123, at 46-48 (citing record). This argument is defeated by the genuine issues of material fact identified above.

## B. Other Pending Motions

The court now addresses multiple motions filed by Jones.

### 1. Mooted Motions

Two of Jones's motions have been resolved without court involvement. First, Jones filed a motion for assistance with obtaining initial disclosures from the county. Dkt. 117. This motion will be denied as moot because, as stated in the county's filing hours later, the county provided the disclosures to Jones shortly after he filed his motion. Dkt. 118. Second, Jones filed a motion for production of documents on July 9, 2026. Dkt. 127. Based on his filing in August stating that the dispute had been resolved, *see* Dkt. 147, his motion for production of documents will be denied as moot.

### 2. Motion to Appoint Counsel

Jones filed a motion for appointed counsel. Dkt. 139. A district court may appoint counsel to advance the proper administration of justice in exceptional circumstances and where an indigent litigant has colorable claims that will not receive a meaningful hearing without counsel. *See* 28 U.S.C. § 1915(e)(1); *Naranjo v. Thompson*, 809 F.3d 793, 803 (5th Cir. 2015); *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982). When deciding whether to appoint counsel, the court

considers the type and complexity of the case, whether the indigent litigant can adequately investigate and present his case, and the level of skill required to present the evidence. *Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007).

Before the defendants filed their summary-judgment motions, the court denied several previous motions to appoint counsel. *See* Dkt. 26; Dkt. 88. At this stage in the case, the court in its discretion finds that trained counsel would assure proper presentation of Jones's ADA and RA claim at trial. The court therefore grants Jones's motion to appoint and will stay and administratively close this case while it locates volunteer counsel.

### 3. Motion for Discovery under Rule 56(d)

Jones filed a motion for discovery and seeks a continuance on the court's summary-judgment ruling under Rule 56(d) because the defendants "deny some essential parts of his claims." Dk. 131, at 1.

Rule 56(d) permits a court to defer consideration of a summary-judgment motion, deny the motion, or allow additional time for discovery before ruling if the non-movant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). Although such motions should be "liberally granted" to safeguard against summary-judgment motions that the non-movant cannot adequately oppose, the non-movant "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the

pending summary judgment motion." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (cleaned up). A court may cut off the non-movant's requests for discovery "when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment." *Id.* (cleaned up).

Jones's motion broadly seeks policies, procedures, rules, and regulations from J. Allen that are relevant to vision care for detainees, and states that the discovery is justified because J. Allen has denied a pre-payment policy. Dkt. 131, at 1. However, as held above, the policymaker for BCDC is Brazoria County, not J. Allen. Thus, the described discovery from J. Allen would be irrelevant to the summary-judgment ruling above, and Jones's request under Rule 56(d) will be denied. *See Raby*, 600 F.3d at 561.

Jones requests multiple documents from Brazoria County, including several relevant to ADA compliance and accommodation requests. Because the court has denied summary judgment on the ADA claim against the county, the court will deny this motion without prejudice to assertion by appointed counsel at a later stage of the litigation, if warranted.

### 4. Motion to Amend

Jones moves to amend elements of his *Monell* claim under Federal Rule of Civil Procedure 15 based on receipt of the defendants' summary-judgment motions and discovery information. Dkt. 146. This motion will be denied because Jones did not attach a complete amended complaint as previously instructed. *See* Dkt. 26, at

2 (order dated Aug. 23, 2023, informed Jones that that any motion to amend must attach a complete amended complaint and warned him that papers filed in violation of the court's instructions could be stricken without further notice).

### 5. Motion to Compel and Motion for Protective Order

Jones filed a motion to compel discovery under Federal Rule of Civil Procedure 37 and alleges that the defendants failed to adequately produce documents relevant to the existence of a pre-payment policy for vision care outside of BCDC. Dkt. 150. The defendants responded. Dkt. 154; Dkt. 155. On a motion to compel, the "burden lies with the moving party to show clearly that the information sought is relevant to the case and would lead to admissible evidence." *S.E.C. v. AmerFirst Funding, Inc.*, No. 3:07-CV-1188-D, 2008 WL 926587, at *2 (N.D. Tex. Apr. 7, 2008) (cleaned up).

Jones argues that the optometrist invoices produced by the defendants are inadequate. He states that he needs a list of all inmates transported for outside of BCDC for vision care; clarification regarding which optometrist appointments were paid by the county and which were not; invoices regarding Jones's two visits to the optometrist; and a list of inmates who requested vision care during the relevant period. However, Jones's claim in this suit is based entirely on an alleged policy or custom of BCDC requiring pre-payment for vision care. Considering the summary-judgment evidence detailed above, in particular, the written policy permitting outside treatment and the auditor's records showing multiple payments for detainee appointments with Dr. Nguyen, Jones does not show that the

additional information he seeks is relevant to proper resolution of his policy claim. Therefore, his motion to compel will be denied. Dkt. 150.

J. Allen's motion for a protective order will be denied as moot. Dkt. 155.

### 6. Motion to Strike

Jones moves to strike the county's video exhibit. Because the court does not rely on the exhibit for any rulings in this opinion, the motion will be denied as moot. Dkt. 157.

## IV. CONCLUSION

For the reasons stated above the court now orders as follows:

1. J. Allen's motion for summary judgment is **GRANTED**. Dkt. 124.

2. Brazoria County's motion for summary judgment is **GRANTED in part** and **DENIED in part** as stated above. Dkt. 123.

3. Jones's motions for assistance with obtaining initial disclosures from the county and for production of documents are **DENIED as moot**. Dkt. 117; Dkt. 127.

4. Jones's motion to appoint counsel is **GRANTED**. Dkt. 139.

5. Jones's motion for discovery is **DENIED** as to his claims against J. Allen and **DENIED without prejudice** as to his claims against Brazoria County. Dkt. 131.

6. Jones's motion to amend is **DENIED**. Dkt. 146.

7. Jones's motion to compel is **DENIED**. Dkt. 150.

8. J. Allen's motion for a protective order is **DENIED as moot**. Dkt. 155.

9. Jones's motion to strike is **DENIED as moot**. Dkt. 157.

10. This case is **STAYED** and **ADMINISTRATIVELY CLOSED** while the court locates *pro bono* counsel to represent Jones for litigation of his ADA and RA claims against Brazoria County.

The Clerk will provide a copy of this order to the parties.

Signed on Galveston Island this 25th day of September, 2026.

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE